CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
SEP 10 2007 for C'ville
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SILVER RING SPLINT CO., <br><br> *Plaintiff,* <br><br> v. <br><br> DIGISPLINT, INC., <br><br> *Defendant.* | CIVIL NO. 3:06cv00065 <br><br><br> MEMORANDUM OPINION AND ORDER <br><br><br> JUDGE NORMAN K. MOON |

This matter is again before the Court on Defendant's January 23, 2007 Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (docket no. 4). I find that Defendant's contacts with the Commonwealth are insufficient to support an exercise of jurisdiction under Virginia's long-arm statute. I also find, however, by a preponderance of the evidence that Plaintiff's claims arise under federal law, that Defendant has such contacts with the United States as a whole to satisfy the Constitution and U.S. law, and that personal jurisdiction over Defendant is unavailable in any other state. Therefore, this Court may exercise personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2). Accordingly, Defendant's Motion to Dismiss is DENIED.

## BACKGROUND

This is a case of copyright and trade dress infringement, as well as unfair trade practices, brought against a Canadian corporation in a U.S. court. In its Complaint, Plaintiff alleged that the design of its products as well as the look of its catalogs have been pilfered to its economic

detriment. Defendant replied to the Complaint with a motion to dismiss under Rule 12(b)(2), alleging a lack of personal jurisdiction due to insufficient contacts with Virginia. In its brief in response, Plaintiff asserted that Defendant does have minimum contacts with Virginia or, in the alternative, that jurisdiction over Defendant is proper pursuant to Fed. R. Civ. P. 4(k)(2).

After hearing oral arguments, I preliminarily denied Defendant's motion, pending the results of discovery on the question of personal jurisdiction under Rule 4(k)(2). The discovery was filed at a second hearing on the motion. Also, in the interim between the two hearings, Defendant filed an answer and a counterclaim, and Plaintiff answered the counterclaim.[1]

## DISCUSSION

### I. Personal Jurisdiction in Virginia

The personal jurisdiction inquiry traditionally proceeds in two steps: (1) analysis of a state's long-arm statute to determine if it authorizes the case in state courts of general jurisdiction, and (2) an inquiry into the constitutional reasonableness of an exercise of jurisdiction. Because Virginia's long-arm statute has been held to extend as far as the Constitution allows, this inquiry may be completed in one step. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

Personal jurisdiction may be exercised over nonresident defendants only when they have sufficient contacts with the forum state as to not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending

---

[1] Several courts have held that a party asserting a counterclaim waives its right to object to personal jurisdiction. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1397 (3d ed. 2004). Because I find that personal jurisdiction is satisfied on other grounds, however, I need not decide whether there was waiver in this case.

on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). If a defendant's contacts with the state form the basis of the suit, "specific jurisdiction" is available, whereas "general jurisdiction" is available only when contacts are so pervasive as to justify jurisdiction on matters unrelated to those contacts. *Id.*

Defendant admits to the following contacts with Virginia: (1) a single sale in Culpeper County, Virginia, initiated via fax by the Virginia customer (Def.'s Mot. Dismiss 5–6, Ex. A); (2) maintenance of a website that is accessible to Virginians (Def.'s Mot. Dismiss 4–5); (3) distribution of information at two trade shows within the United States to at least one Virginian (Def.'s Mot. Dismiss 6); (4) two "blast" emails and a letter that may have been sent to Virginians (Def.'s Answers Interrogs. ¶ 11); (5) an advertisement in two issues of a trade periodical, *Exploring Hand Therapy*, that, according to Plaintiffs, has numerous Virginia subscribers, as well as ads in two other publications that may have been seen by Virginians (Def.'s Answers Interrogs. ¶ 11; Pl.'s Br. Opp. Mot. Dismiss 2); (6) an email received from a Virginian and responded to by Defendant (Def.'s Answers Interrogs. ¶ 15); and (7) a continued willingness to do business with Virginians, should any choose to contact Defendant.

### A. General Jurisdiction

It should be clear from the outset that if general jurisdiction were found in this case, the limitations on personal jurisdiction would be essentially obliterated for almost any business with an online presence. To justify general jurisdiction, contacts with the forum state must be "continuous and systematic." *See ALS Scan, Inc. v. Digital Servs. Consultants, Inc.*, 293 F.3d 707, 712–16 (4th Cir. 2002) (citations omitted); *Reynolds & Reynolds Holdings, Inc. v. Data*

*Supplies, Inc.*, 301 F. Supp. 2d 545, 552 (E.D. Va. 2004). In the internet age, a generally available website, some limited promotional activities, and a single sale simply cannot constitute "continuous and systematic" contacts. The question is thus one of specific jurisdiction.

*B. Specific Jurisdiction*

The Fourth Circuit has established three elements of specific jurisdiction: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS*, 293 F.3d at 712 (citations omitted). In addition, the Fourth Circuit has "adopt[ed] and adapt[ed]" the *Zippo* test for evaluating the sufficiency of contacts with the forum made via electronic means such as the internet. *See ALS*, 293 F.3d at 713–14 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The Fourth Circuit's formulation is as follows:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714.

In applying these standards to Defendant's contacts with Virginia, the case of *Graduate Management Admission Council v. Raju*, 241 F. Supp. 2d 589 (E.D. Va. 2003), is instructive. In *Raju*, the owner of a website offered copyrighted materials for sale to customers throughout the world. *Id.* at 590. The contacts with Virginia were arguably even greater than those in the instant case, including at least two sales to customers in Virginia and a testimonial from a

Virginia customer that was posted on the website. *Id.* at 590–92. The website obviously targeted U.S. customers, but could not be said to have targeted Virginians specifically, even though Virginians could place orders and expect them to be filled. *Id.* at 595–96. After a thorough discussion of the law of personal jurisdiction, the court held that the *ALS* test was not satisfied and there was therefore an absence of personal jurisdiction in Virginia. *Id.* at 592–95. Notably, the court stated:

> [T]he shipment of materials to two Virginia customers is not a sufficient basis for personal jurisdiction, although the question is close. . . . [T]he interaction in this case with Virginia residents was minimal; Raju simply shipped the materials to the two customers at the addresses they provided. Two shipments and one purported customer testimonial are not a sufficient basis on which to conclude that Raju was intentionally directing his website at a Virginia audience.
> . . . Indeed, if personal jurisdiction could be grounded on these two shipments, a plaintiff could create personal jurisdiction over an online retailer in any forum nationwide or worldwide by simply ordering and receiving a minimal amount of product in that forum.

*Id.* at 595 & n.13 (citations omitted).

This Court is entirely in accord with the *Raju* court on this question. The fact that a website is *available* in Virginia—and even the fact that it is used by Virginians—is not the same as an intentional direction of activities toward Virginia sufficient to meet the 4th Circuit's modified *Zippo* test. The same is true of a single sale initiated via fax by a Virginian. Moreover, the fact that Defendant's few other non-internet marketing attempts could also have been seen by Virginians is simply more of the same and cannot amount to "purposeful availment." Taken together, Defendant's contacts are insufficient to support jurisdiction in Virginia.

## II. Jurisdiction Under Rule 4(k)(2)

Nevertheless, this Court may still exercise jurisdiction over Defendant if the requirements of Rule 4(k)(2) are satisfied. "Rule 4(k)(2) is in essence a federal long-arm statute." *Saudi v.*

- 5 -

*Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). It was adopted to remedy "a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements," *Raju*, 241 F. Supp. 2d at 597. As the Fourth Circuit explained in *Saudi*:

> In order to obtain jurisdiction under Rule 4(k)(2) . . . three requirements must be met. First, the suit must arise under federal law. Second, the defendant must not be subject to personal jurisdiction in any state. Third, the defendant must have contacts with the United States "consistent with the Constitution and laws of the United States."

*Saudi*, 427 F.3d at 275 (quoting Fed. R. Civ. P. 4(k)(2)).

### A. Arising Under Federal Law

Copyright and trade dress claims clearly arise under federal law; the whole of Title 17 of the United States Code concerns the former, and Chapter 22 of Title 15 includes the relevant provisions governing the latter. The unfair trade practices provisions of the Lanham Act are also found in Title 15. Thus, the first prong of the *Saudi* test is satisfied.

### B. Contacts with the United States

Skipping forward to the third prong, the question is whether Defendant's "contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002). In other words, Defendant must have contacts with the United States as a whole sufficient to satisfy the standards for either specific jurisdiction or general jurisdiction. *See Saudi*, 427 F.3d at 275–76. As applied to specific jurisdiction, the third prong of the *Saudi* test thus turns on "(1) the extent to which the defendant 'purposefully

- 6 -
Case 3:06-cv-00065-NKM-BWC   Document 26   Filed 09/10/07   Page 6 of 12   Pageid#: 150

avail[ed]' itself of the privilege of conducting activities in the [United States]; (2) whether the plaintiffs' claims arise out of those activities directed at the [United States]; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS*, 293 F.3d at 712 (citations omitted).

Defendant admits to the following contacts with the United States:

- fourteen orders shipped to the United States in 2006, representing $2,147 in sales and 3.142% of Defendant's total sales in 2006 (Def.'s Answers Interrogs. ¶ 7);

- a website that is accessible to U.S. residents (Def.'s Mot. Dismiss 4–5);

- a "blast" email sent to all members of the American Society of Hand Therapists stating that "therapists now have a choice as to who they can order custom made splits from now in the US" (Def.'s Answers Interrogs. ¶ 11);

- another "blast" email and a letter sent to all members of the American Society of Hand Therapists stating Defendant's willingness to meet at an upcoming trade show in Atlanta, GA (Def.'s Answers Interrogs. ¶ 11);

- an advertisement published four times in three U.S.-based publications with national audiences, "stating that Digisplint is now available to the United States" and that "Digisplints are a 'wonderful alternative to what has been made available to you before'" (Def.'s Answers Interrogs. ¶ 11);

- attendance at the Med Trade trade show in Atlanta, GA with Ontario Works, "a provincially sponsored association committed to [i]ntroducing new business to the US market for export," for the purpose of "meet[ing] up with prospective distributors" (Def.'s Answers Interrogs. ¶ 11);

- meetings at the Med Trade show with two prospective U.S. distributors (Def.'s Answers Interrogs. ¶ 11);

- attendance at the American Society of Hand Therapy trade show in Atlanta, GA, where Defendant "met with Hand Therapists from all over the United States," "handed out about 50–70 of its measuring kits," and distributed a brochure to U.S. therapists "that state[d] Digisplint is 'Now available to the USA!'" (Def.'s Answers Interrogs. ¶ 11);

- a U.S. trademark registration for the name "Digisplint" (Def.'s Answers Interrogs. ¶ 4);

- designation of a U.S. agent and registration with the U.S. Food and Drug Administration (FDA) (Def.'s Answers Interrogs. ¶ 4);

- requests for information received from 122 hand therapists in the U.S. (Def.'s Answers Interrogs. ¶ 8), most or all of which Defendant likely fulfilled (*see* Def.'s Answers Interrogs. ¶ 6);

- continuing efforts to market and sell its products to customers in the United States (Def.'s Answer & Countercls. 9).

It is abundantly clear from the foregoing list of contacts that Defendant has purposefully availed itself of the privilege of conducting business in the United States. Defendant is actively soliciting U.S. customers and has taken steps both in Canada and the United States to compete in the U.S. fingersplint market. Particularly persuasive is Defendant's registration with the FDA and its designation of a U.S. agent. Not only do these acts themselves show purposeful availment, they are also indicative of other such acts, in that the FDA requires registration and designation of a U.S. agent only for those "foreign establishments importing or offering for import devices into the United States." 21 C.F.R. § 807.40.

At oral argument, Defendant emphasized its relatively few sales to U.S. customers. The fact that a defendant has had only limited success in its efforts to attract U.S. customers, however, is of little consequence when, as here, the efforts alone are sufficient to constitute purposeful availment. When a defendant's sales and marketing actively and directly target the United States, and when a defendant avails itself of U.S. laws and regulations in furtherance of those efforts, that defendant "should reasonably anticipate being hauled into court" in the United States. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is also clear that Plaintiff's claims arise out of these activities. All of Defendant's activities directed at the United States involve the marketing and/or sale of its products. Inasmuch as Plaintiff claims that Defendant's marketing materials and products infringe on Plaintiff's rights, Plaintiff's claims arise from Defendant's activities in the United States.

Finally, the exercise of personal jurisdiction over Defendant would be constitutionally "reasonable." Admittedly, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* Bearing in mind that, in the context of Rule 4(k)(2), the "forum" at issue is the United States as a whole, both the Plaintiff and the forum have very strong interests in the exercise of jurisdiction because the dispute centers on questions of federal law. Taken together with Defendant's significant contacts with the United States, I cannot find that the exercise of jurisdiction is unreasonable.

Thus, Defendant contacts with the United States as a whole are sufficient to satisfy the requirements of specific jurisdiction and are therefore "consistent with the Constitution and laws of the United States." *Saudi*, 427 F.3d at 275 (quoting Fed. R. Civ. P. 4(k)(2)).[2]

### C. Absence of Personal Jurisdiction in Any State

With the first and third prongs of the *Saudi* test satisfied, the only remaining question is whether Defendant is "subject to personal jurisdiction in any state." *Saudi*, 427 F.3d at 275. The necessity of negating jurisdiction for each of the fifty states presents plaintiffs with a serious practical difficulty, a difficulty that the Fourth Circuit has not yet needed to address in resolving Rule 4(k)(2) questions. *See id.* at 275–77 (deciding that there was no Rule 4(k)(2) jurisdiction because the defendant lacked minimum contacts with the United States as a whole); *Base Metal*

---

[2] Defendant's contacts may also be sufficient to satisfy the "continuous and systematic" standard of general jurisdiction. *See Base Metal Trading*, 283 F.3d at 213. Because I find, however, that the requirements of specific

*Trading*, 283 F.3d at 215–16 (same).[3] The Seventh Circuit, however, has developed a solution, which the Fifth Circuit and the D.C. Circuit have also adopted:

> A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable). If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *see also Adams v. Unione Mediterranea di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (adopting the Seventh Circuit's view); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (same). This approach "makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit." *ISI Int'l*, 256 F.3d at 552.

The First Circuit employs a similar approach but with a more precise allocation of the parties' burdens. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41–42 (1st Cir. 1999). Under either formulation, however, the procedure is essentially the same. Once the plaintiff has made a prima facie showing that the defendant's contacts with the nation as a whole satisfy the constitutional requirements, "the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." *Id.* at 41.[4]

---

jurisdiction are satisfied, I need not reach that question.

[3] In *Base Metal Trading*, the court did acknowledge the issue of jurisdiction in any of the fifty states. *Base Metal Trading*, 283 F.3d at 215. However, because there were "cases pending in other courts in which Base Metal was arguing strenuously that NKAZ had sufficient contacts to warrant the exercise of personal jurisdiction," *id.* at 212, the Fourth Circuit declined to decide whether there was a lack of jurisdiction in any state. *See id.* at 215 ("[T]he problem here is that to determine that another state lacks jurisdiction would require us to decide a question currently pending before at least one of our sister circuits.").

[4] To be clear, only the burden of *production* shifts to the defendant. In the Order and Opinion dated April 5, 2007, my explanation of the parties' respective burdens could be interpreted as suggesting that Defendant bears the burden of *proof* as to jurisdiction. Although there is room under Rule 4(k)(2) for shifting the burden of production, let there be no mistake: "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately

- 10 -
Case 3:06-cv-00065-NKM-BWC   Document 26   Filed 09/10/07   Page 10 of 12   Pageid#: 154

As previously discussed, Defendant's contacts with the United States fully satisfy the Constitution, and its argument to the contrary is unavailing. Therefore, the only question is whether Defendant has produced evidence that it would be subject to personal jurisdiction in one or more states. Defendant has identified a variety of limited contacts with various states but has taken pains to emphasize that these contacts do not support jurisdiction in any. For example, in its answers to Plaintiff's interrogatories, Defendant stated that it shipped four orders to California and three orders to Florida in 2006; no other state accounted for more than one order. But rather than suggest that jurisdiction is proper in California or Florida, Defendant went on to emphasize that one of the California orders was returned and one of the Florida orders was never paid for, "reduc[ing] the number of sales in Florida to 2 and the number of sales in California to a *mere* three." (Def.'s Answers Interrogs. ¶ 7 (emphasis added)). At oral argument, Defendant further emphasized that its contacts with individual states are not of constitutional significance.

Clearly, Defendant's intent is to deny that it is subject to personal jurisdiction in any U.S. state. And on the basis of the evidence in the record, Defendant appears to be correct. As already discussed in the context of jurisdiction in Virginia, a generally accessible website and a few non-internet marketing efforts not targeted at any particular state cannot support an exercise of jurisdiction in a state. Even with respect to California, I cannot find, without more, that shipping four orders (as opposed to the one order shipped to Virginia) is enough to create minimum contacts with California.

Because Plaintiff has proven that Defendant's contacts with the United States as a whole satisfy the Constitution, the burden is on Defendant to produce evidence that it is subject to

---

bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)).

jurisdiction in another state. Defendant has failed to do so; to the contrary, it affirmatively maintains that it is *not* subject to jurisdiction in another state. Taking this as evidence of a tacit admission that jurisdiction is unavailable in any state, and considering the other evidence in the record, I find that Defendant is "not . . . subject to personal jurisdiction in any state," *Saudi*, 427 F.3d at 275, and that the second prong of the *Saudi* test is therefore satisfied.

## CONCLUSION

Based on all the evidence before me, I find that Plaintiff has proven the existence of jurisdiction under Rule 4(k)(2) by a preponderance of the evidence. Accordingly, Defendant's Motion to Dismiss for lack of personal jurisdiction (docket no. 4) is hereby DENIED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

ENTERED: ___Norman K. Moon___
United States District Judge

___Sept. 10, 2007___
Date